*914 TEXTO COMPLETO DE LA SENTENCIA
La controversia ante nuestra consideración guarda relación con una petición de interdicto para detener las obras de construcción realizadas en un local donde operó una estación de gasolina. Los trabajos en controversia pretenden habilitar una estación de gasolina, y los operadores de otra estación cercana se oponen por entender que aquéllos carecen de los permisos que legitimen la obra.
La parte, identificada como Santa Paula Oil Corporation (Santa Paula), promovió un interdicto al amparo del Artículo 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos (A.R.P.E.). Además, Santa Paula reclamó daños y perjuicios. El Tribunal de Primera Instancia denegó el interdicto.
Resolvemos que el señor Israel Benitez carecía de los permisos necesarios para construir y operar la estación de gasolina.
I
Santa Paula opera una gasolinera en la Carr. 2, Km. 14.2, en Hato Tejas, Bayamón. Estos observaron que en un local cercano, utilizado en el pasado como estación de gasolina, se realizaban mejoras y obras de construcción. En el área de trabajo no estaban visibles los permisos de uso y construcción, tal y como lo requiere la reglamentación vigente.
Santa Paula acudió a la Oficina de Permisos del Gobierno Municipal Autónomo de Bayamón (Oficina de Permisos), y presentó una querella el 29 de enero de 2008. A la querella se le asignó el número 08-15-0147-Q.
La Oficina de Permisos realizó una inspección el 30 de enero de 2008 y, posteriormente, emitió una orden de paralización de la construcción por carecer de los permisos requeridos. Se determinó que la obra ubicaba en un distrito CU. La orden de paralización se dirigió contra una persona que no es parte en el presente caso y que se identificó como el señor Enrique Díaz. Por razones no explicadas en el expediente, la obra continuó y también el proceso administrativo en el Municipio.
Santa Paula presentó una solicitud de interdicto ante el Tribunal de Primera Instancia el 13 de marzo de 2008 en la cual procuró protección y amparo en el Art. 28 de la Ley Orgánica de A.R.P.E., Ley 76 de 24 de junio de 1970, según enmendada, 23 L.P.R.A. see. 72 (Ley Orgánica de A.R.P.E.).
El Tribunal de Primera Instancia denegó la solicitud de interdicto. Santa Paula acudió al Tribunal de Apelaciones y mediante sentencia se revocó la decisión y se ordenó la paralización de las obras de construcción. Además, se ordenó al Tribunal de Primera Instancia continuar los procedimientos y celebrar una vista judicial en 10 días.
El Tribunal de Primera Instancia celebró una audiencia el 1 de mayo de 2008. A la vista comparecieron las partes representadas por sus abogados. En la audiencia testificó la Ing. Mayda Colón, el demandante, señor Nelson Capote Ferrer, y se presentó, como prueba documental, la querella del demandante y el expediente administrativo. El demandado presentó el testimonio del Ing. Oscar Loubriel. El apelado se identificó como el señor Israel Benitez. Este presentó en el Tribunal un documento que alegó era un permiso de uso que data de 1995 y que está vigente, pues no fue revocado. También se presentó un permiso de construcción expedido por la Oficina de Permisos. Santa Paula alegó que no fue notificada previamente del trámite del permiso de construcción.
El Tribunal de Primera Instancia dictó lo que tituló Sentencia en la cual desestimó el recurso por inoficioso (académico). En sus determinaciones de hechos, el Tribunal estableció que el demandado tenía un permiso de uso que data de 1995 y un permiso de construcción que se solicitó y concedió mientras se tramitaba el caso *915 judicial. El Foro de Instancia concluyó que los permisos se mantienen vigentes mientras no se revoquen y, por lo tanto, el permiso de uso obtenido en el 1995 continuaba vigente.
Inconforme con la decisión, Santa Paula presentó un recurso de apelación en el cual alegó que se cometieron dos errores. En primer lugar, alegó que erró el tribunal al desestimar la demanda cuando adjudicó la petición de interdicto, ya que Santa Paula presentó una causa de acción de daños y perjuicios junto con la petición de interdicto. En segundo lugar, alegó que erró el tribunal, pues debió ordenar la paralización de la construcción.
El apelado compareció en oposición a la apelación. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
Conviene establecer algunas normas de derecho aplicables al caso.
1. Procedimiento especial en la Ley Orgánica de ARPE
La Ley Orgánica de A.R.P.E. contiene un procedimiento especial establecido para proveerle a A.R.P.E. los mecanismos procesales necesarios para hacer viable la implantación de su política pública. A.R.P.E. v. Rodríguez, 127 D.P.R 793, 802-803 (1991). El Artículo 17 de la referida ley, 23 L.P.R.A. sec. 71p., establece, en lo pertinente, lo siguiente:

“A partir de la vigencia de esta ley y de la vigencia de la reglamentación administrativa dispuesta por la Administración para la tramitación de permisos, no se construirá, reconstruirá, alterará, demolerá ni trasladará edificio alguno en Puerto Rico, ni se instalarán facilidades, ni se subdividirá, desarrollará, urbanizará terreno alguno, a menos que dicha obra sea previamente aprobada y autorizada por la Administración.

La Administración le requerirá al dueño de la obra tener en un lugar accesible y visible un rótulo o cartel que exprese la obra que se realiza, el número de caso de la agencia pertinente que emitió la aprobación y el nombre del dueño del proyecto y del contratista que la realiza. De no cumplirse con este requisito no se podrá efectuar una construcción, reconstrucción, alteración, demolición, ni traslado de edificio alguno en Puerto Rico. ”

Por otro lado, el Artículo 28 de la Ley Orgánica de A.R.P.E. establece un procedimiento especial de paralización de usos u obras (procedimiento especial) con el propósito de viabilizar la efectividad de las leyes y reglamentos de planificación que A.R.P.E. está obligada a fiscalizar. Plaza Las Américas v. N & H, 166 D.P.R. 631, 646 (2005). Dicho artículo dispone, en lo pertinente; lo siguiente:

“El Administrador o Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiere resultar especialmente perjudicado por cualesquiera de dichas violaciones, además de los otros remedios provistos por ley, podrá establecer recurso de interdicto, mandamus, nulidad o cualquiera otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a ley y cuya estructuración le haya sido encomendada a la Administración.

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este Capítulo a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (nuisance) adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se *916 provee el siguiente procedimiento especial:

“(a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, erigido, exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido o usado, o demolido, en violación de este Capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato, la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho.

(b) En la orden provisional se fijará la fecha de la vista que deberá celebrarse dentro de los diez (10) días siguientes a la radicación de la petición y se advertirá al querellado que en dicha vista podrá él comparecer, personalmente o por abogado, a confrontarse con las imputaciones que se le hacen, pudiendo dictarse la orden permanente si dejare él de comparecer.

(c) Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas e inspectores de la obra.

(d) Dicha orden deberá ser diligenciada en la misma forma en que se diligencia la citación para la primera comparecencia en los casos de desahucio. Se podrán utilizar los servicios de cualquier alguacil de los tribunales de justicia de Puerto Rico o de cualquier miembro de la Policía Estatal para diligenciar dicha orden. Se entregará al querellado copia de la orden y copia de la petición jurada. Ambos documentos llevarán el sello del tribunal.

(e) El querellado no vendrá obligado a radicar alegación escrita alguna en contestación a la petición, pero podrá oponer cualquier defensa procedente, como si se tratase de un caso criminal. No se cobrarán costas. Siempre que surgiese controversia sobre los hechos, el tribunal realizará una inspección ocular si lo creyere conveniente y si alguna de las partes lo solicita durante la vista.

(f) La resolución será emitida por el tribunal dentro de los diez (10) días siguientes a la celebración de la vista y podrá ordenar la paralización permanente de los actos alegados en la petición o dejar definitivamente sin efecto la orden provisional. Toda resolución será escrita y contendrá una exposición de las alegaciones principales de la petición y de la prueba producida por ambas partes, una referencia al mapa, plano o ley alegadamente infringido, o una transcripción de la disposición reglamentaria aplicable y una exposición de lo que hubiese demostrado la inspección ocular.
(g) Las resoluciones y órdenes serán apelables para el tribunal correspondiente de superior jerarquía. En tales apelaciones, y en lo aquí provisto, regirán los términos y procedimientos que rigen las apelaciones en las acciones ordinarias, pero el récord lo constituirá el expediente original, que deberá ser elevado al tribunal de apelación. En caso de que la apelación se funde en apreciación de la prueba y así se haga constar en el escrito de apelación, podrá elevarse la transcripción de la evidencia. En todos los demás casos, se considerarán como finales, a los efectos de la apelación, las adjudicaciones de hechos contenidas en la resolución. ” (Enfasis suplido).
23 L.P.R.A. 72.
Nuestro Tribunal Supremo ha expresado en reiteradas ocasiones que el procedimiento especial incluido en el Art. 28 de la Ley Orgánica de A.R.P.E. es un mecanismo estatutario, independiente, especial, sumario y *917 limitado. Plaza Las Américas v. N & H, supra, pág. 646; Luán Investment Corp. v. Román, 125 D.P.R 533, 544 (1990). El propósito exclusivo del recurso es paralizar las obras o usos que violen la ley. A.R.P.E. v. Rodríguez, supra, pág. 809. ,
Según se desprende del Artículo antes citado, cuando se invoca el procedimiento especial, el tribunal debe paralizar provisionalmente la obra o uso, y una vez se cumplan los demás requisitos enumerados en el artículo, debe determinar si en efecto ocurrió la violación alegada. Plaza Las Américas v. N & H, supra, págs. 646-647. Si el tribunal encuentra que en efecto se llevó a cabo la violación, debe ordenar la paralización permanente de la obra o el uso, de acuerdo a las formas y condiciones especificadas en el Artículo 28. Plaza Las Américas v. N & H, supra, pág. 647. Además, en la resolución que emita el tribunal luego de celebrar la vista que requiere el Artículo 28, éste sólo puede ordenar la paralización permanente de los actos alegados o dejar sin efecto la orden provisional.
El Artículo 28 le autoriza a la persona legitimada a presentar un injunction en contra del alegado violador de las disposiciones de la Ley Orgánica de A.R.P.E. o alguno de los reglamentos, planos o mapas bajo la administración de dicha agencia. 23 L.P.R.A. 72. Esta petición de injunction no surge de la jurisdicción de equidad de la corte en virtud de la cual el tribunal ordena a una persona bajo apercibimiento de desacato que haga o deje de hacer un acto que infrinja o perjudique el derecho de otra persona. A.R.P.E. v. Rivera, 159 D.P.R 429, 444 (2003).
Bajo este procedimiento estatutario, tampoco se tienen que alegar o probar daños irreparables. A.R.P.E. v. Rivera, supra, pág. 444. Lo único que hay que probar es que el demandado ha violado las disposiciones de la ley. A.R.P.E. v. Rivera, supra, pág. 444. Es decir, la persona legitimada para instar el procedimiento del Artículo 28 deberá traer a la consideración del tribunal el hecho de que existe una ley o reglamento que regula el uso o actividad y que la persona señalada realizó o realiza un uso o actividad en violación a esa ley o reglamento. A.R.P.E. v. Rivera, supra, pág. 445.
Los principios generales del derecho aplicarán en el procedimiento especial sólo cuando se necesiten para suplir alguna deficiencia de la ley especial. A.R.P.E. v. Rodríguez, supra, pág. 803. Nuestro Tribunal Supremo ha establecido que las acciones de carácter general se deben tramitar de acuerdo con el estatuto correspondiente; sin embargo, aplicarán las Reglas de Procedimiento Civil en las circunstancias en que no sean incompatibles con su propósito. A.R.P.E. v. Rodríguez, supra, pág. 803. Por ejemplo, las órdenes de paralizar que se emiten en virtud del procedimiento especial constituyen remedios estatutarios e independientes del injunction tradicional, ya que no surgen de los principios de equidad. Plaza Las Américas v. N & H, supra, pág. 650. Estas deben evaluarse según los criterios expuestos en el Art. 28 y su jurisprudencia interpretativa. Plazo Las Américas v. N & H, supra, pág. 650. No obstante, estas órdenes guardan relación con ciertos remedios provisionales incluidos en nuestras Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III. El Tribunal Supremo ha expresado lo siguiente al respecto:
"Las órdenes emitidas al amparo del procedimiento especial, llámense 'provisionales' o 'permanentes', constituyen un remedio con cierta afinidad a los estados provisionales de derecho, los mecanismos de aseguramiento de sentencia y los injunctions preliminares, sin gozar de la finalidad que caracteriza los injunctions permanentes." (Enfasis en el original)
Plaza Las Américas v. N & H, supra 649-650.
2. Los permisos de uso y la planificación
Desde el siglo pasado, la política pública del Estado Libre Asociado de Puerto Rico ha sido dirigir el proceso de planificación hacia un desarrollo integral y sostenible "que asegure el juicioso uso de las tierras y *918 fomente la conservación de los recursos naturales para el disfrute y beneficio de todos." A.R.P.E. v. Rivera, supra, 437. Conforme a estos propósitos, el Artículo 4 de la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley 75 de 24 de junio de 1975, 23 L.P.R.A. 62 et seq., establece lo siguiente:

“Los poderes concedidos en este Capítulo se ejercerán con el propósito general de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente. ”

23 L.P.R.A. sec. 62c.
La Junta de Planificación de Puerto Rico (Junta de Planificación) fue creada para proteger los intereses de la ciudadanía al poner en vigor la política pública de planificación y zonificación. Luán Investment Corp. v. Román, supra, pág. 548. La reglamentación que implementa la Junta de Planificación surge del poder del Estado de regular la propiedad para proteger la salud, el bienestar y la seguridad de los puertorriqueños. Luán Investment Corp. v. Román, supra, pág. 548.
La zonificación tiene el propósito de establecer las normas referentes a la forma y el lugar de ubicación de las múltiples actividades sociales y económicas de Puerto Rico. Asoc. Res. Park Side, Inc. v. J.P., 149 D.P.R 300, pág. 308. La reglamentación de la zonificación le permite al Estado asumir un rol activo en el control y la regulación del uso de la tierra y nuestro ecosistema con el propósito de armonizar intereses y aspiraciones, y causar las menores perturbaciones sociales. Luán Investment Corp. v. Román, supra, pág. 548. El Tribunal Supremo ha expresado que "jija Junta de Planificación adopta el Reglamento de Zonificación para guiar el uso y desarrollo de los terrenos en Puerto Rico." Asoc. Res. Park Side, Inc. v. J.P., supra, pág.308.
Por otro lado, la Ley de Municipios Autónomos, Ley 81 del 30 de agosto de 1991, 21 L.P.R.A. see. 4051 et seq., fue creada con el propósito de "ampliar el ámbito de facultades y funciones de los municipios, transfiriéndoles competencias de planificación y reglamentación de sus territorios, y autorizando que se les delegue otras materias de la competencia del Gobierno Central." Gobierno Ponce v. Caraballo, 166 D.P.R 731 (2006). El Artículo 13.012 de la Ley de Municipios Autónomos establece que:

“El municipio podrá, siguiendo el procedimiento y las normas establecidas en las sees. 4651 et seq. de este título, solicitar al Gobernador la transferencia de ciertas facultades de la Junta de Planificación y de la Administración de Reglamentos y Permisos sobre la ordenación territorial, incluyendo querellas, autorizaciones y permisos. ”

21 L.P.R.A. see. 4610. El Gobierno Municipal Autónomo de Bayamón suscribió el 28 de agosto de 1999 un Convenio de Transferencia de Ciertas Facultades de la Junta de Planificación y la Administración de Reglamentos y Permisos por el Gobierno Estatal de Puerto Rico al Municipio de Bayamón, Ley 81 del 30 agosto de 1991. Mediante este convenio, el Municipio Autónomo de Bayamón quedó facultado para regular algunos usos del suelo dentro de su jurisdicción geográfica. En virtud de esta disposición, el Municipio de Bayamón elaboró el Reglamento de Ordenación Núm. 3 que Regirá las Disposiciones Sustantivas y Procesales de la Oficina de Permisos del Municipio de Bayamón (Reglamento de Ordenación Núm. 3).
La Sección 1.01 (D) (1) del Reglamento de Ordenación Núm. 3 establece, en lo pertinente, que sus disposiciones "aplicarán a toda solicitud de permiso de uso y solicitud de permiso de construcción en suelo *919 urbano, urbanizable o rústico" dentro del territorio bajo la jurisdicción del Municipio de Bayamón. La sección 3.05 (A) del Reglamento de Ordenación Núm. 3 expone que:

‘‘[NJingún edificio o estructura podrá ser ocupado o utilizado hasta que se emita un permiso de uso por el Oficial de Permisos, luego de una determinación que el edificio o estructura ha sido construido de acuerdo con las provisiones del permiso de construcción. ”

Por otro lado, la sección 3.05 (B) (2) dispone que se requiere un permiso de uso "[cjuando ocurre un cambio en la tenencia o uso de un edificio o estructura no-residencial existente." La sección 10.02 de dicho Reglamento establece que:

“[T]oda decisión en que se autorice cualquier permiso de uso quedará sin efecto si [...] luego de haberse obtenido el correspondiente permiso de uso, el uso autorizado no queda establecido dentro de un término de un (1) año a partir de la fecha de expedición del permiso. ”

El Reglamento de Zonificación vigente al momento en que ocurrieron los hechos de este caso es el Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de la Junta de Planificación, Reglamento 6211, Departamento de Estado, efectivo el 5 de noviembre de 2000 (Reglamento 6211). La sección 3.02 de dicho Reglamento dispone lo siguiente:
“A partir de la fecha de vigencia de este Reglamento, se requerirá la expedición por la ARPE [de] un permiso de construcción para toda construcción, reconstrucción, alteración, ampliación o traslado de cualquier estructura, así como un permiso de demolición o de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos. Cuando se trate de la construcción de estructuras provisionales, tales como graderías, pabellones y carpas, se requerirá un permiso temporero para construcción y uso por un tiempo limitado. Tales estructuras serán removidas por completo al vencer la fecha de vigencia del permiso. Si el uso para el cual se expide un permiso se descontinuara por un (1) año o más, el mismo dejará de ser válido independientemente de que sea un uso permitido o conforme legal. ” (Enfasis suplido)
Además, de acuerdo a la sección 3.04 del Reglamento 6211, el permiso de uso se debe exhibir en un lugar visible y accesible del proyecto.
Debemos notar que el Reglamento 6211 fue anulado y sustituido por el Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 de la Junta de Planificación, Reglamento 7511, Departamento de Estado, efectivo el 27 de junio de 2008 (Reglamento 7511). La sección 3.02 del Reglamento 7511 establece, en lo pertinente, que:

“Si el uso para el cual se expide un permiso se descontinuara por dos (2) años o más, el mismo dejará de ser válido independientemente de que sea un uso permitido o no conforme legal, excepto permisos expedidos para viviendas que no tendrán fecha de vencimiento. El permiso se expide a la propiedad (In Rem), por lo que un cambio de dueño no requiere un nuevo permiso si mantiene un mismo uso. ”

Podemos observar que continúa la práctica de invalidar los permisos de uso cuando dicho uso autorizado cesa. Sin embargo, el Reglamento de Ordenación vigente aumenta el término de tiempo que activa la invalidación del permiso a dos años.
La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2101 et seq., (L.P.A.U.) establece que "las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal." 3 L.P.R.A. see. 2175. Las decisiones administrativas tienen a su favor una presunción de legalidad y corrección; por lo tanto, su revisión judicial tiene el objetivo de *920 asegurarse que las agencias desempeñen sus funciones conforme la ley. García v. Cruz Auto Corp., 2008 J.T.S. 112, 174 D.P.R _ (2008).
Los tribunales apelativos deben ejercer su discreción al intervenir con las determinaciones emitidas por las agencias administrativas, ya que se reconoce su especialización y experiencia en los asuntos que tienen ante si. P.C.M.E. v. J.C.A., 166 D.P.R. 614-615 (2005). Los tribunales apelativos deben distinguir entre asuntos en los cuales la agencia puede ejercer su discreción o pericia administrativa y cuestiones de interpretación estatutaria, en las que los tribunales son los especialistas. García v. Cruz Auto Corp., supra.
Las conclusiones de derecho que emiten las agencias administrativas son revisables en su totalidad. P. C.M. E. v. J.C.A., supra, pág. 616. La interpretación del estatuto que hace la agencia no prevalecerá cuando produce resultados contrarios a los propósitos de la ley. García v. Cruz Auto Corp., supra. No obstante, en su función revisora, los tribunales deben deferencia a las conclusiones de derecho que hacen las agencias y las interpretaciones estatutarias de las leyes que les corresponde administrar. P.C.M.E. v. J.C.A., supra pág. 616. Por tanto, si las determinaciones que toma la agencia se sostienen luego de un examen de la totalidad del récord, los tribunales no deben sustituirlas por su propio criterio.
También se ha reconocido en nuestro ordenamiento que el foro recurrido se encuentra en la misma posición que la agencia administrativa ante prueba documental y pericial, y está facultado para apreciar esta prueba y poner en uso su propio criterio. García v. Cruz Auto Corp., supra.
Ill
Ambas partes coinciden en que el local en controversia no operó durante varios años. Tampoco hay disputa en cuanto a que, al momento en que se presentó el interdicto, el local no tenía un permiso de construcción vigente y no se presentó en el Tribunal un permiso de uso vigente. El apelado, señor Benitez, promovió y obtuvo de la Oficina de Permisos del Municipio el permiso de construcción mientras se ventilaba el interdicto. En cuanto al permiso de uso, cabe señalar que la Oficina de Permisos del Municipio resolvió, luego de presentarse la apelación, que el Municipio autorizó la operación de una estación de gasolina con cuatro (4) bombas. Véase Resolución del Oficial de Permisos del Municipio de 17 de diciembre de 2008.
La conclusión emitida por el Tribunal de Primera Instancia en su sentencia de 2 de mayo de 2008 a los efectos de que el permiso de uso otorgado en el 1995 continúa vigente por no haber sido revocado, expresamente no era correcta.
El Foro de Instancia concluyó que la Ingeniera de la Oficina de Permisos declaró que existe un permiso de uso que data del año 1995. Sin embargo, el señor Israel Benitez compareció al proceso administrativo y expresó que no encontró copia del permiso de uso, ni expediente relacionado con él en las agencias y solicitó que se tramitara el permiso. Apéndice de la Apelación, págs. 121-122.
Examinamos el llamado permiso de uso otorgado en 1995 y en sus términos claramente se refiere a un "mini market" en una estación de gasolina existente. Apéndice de la Apelación, pág. 57. Tal permiso no puede considerarse como un permiso para operar una estación de gasolina.
Santa Paula presentó una moción del señor Israel Benitez ante la Oficina de Permisos, fechada 19 de agosto de 2008, en la cual aquél reconoció que no tenía copia del permiso de uso de la estación de gasolina. Afirmó la representación legal del señor Benitez que realizó "múltiples gestiones para localizar los expedientes donde se entiende deben estar los permisos de uso de la gasolinera en cuestión". Apéndice de la Apelación, pág. 121. Recordemos que, aunque el permiso de uso obtenido fuera el adecuado para operar la estación de gasolina en cuestión, debía ser expuesto en un lugar visible y accesible de la estación, por lo que, el no mostrar el permiso al público, constituye, en si mismo, una violación a la reglamentación aplicable.
*921 En conclusión, en el presente caso, el señor Israel Benitez no pudo presentar al Tribunal de Primera Instancia un permiso de uso vigente y aceptó, ante la Oficina de Permisos, que éste no estaba en su poder ni en poder de las agencias reglamentadoras. Por ello fue necesario que tramitara la nueva solicitud en la Oficina de Permisos del Municipio, tal y como lo expresó en su moción en cumplimiento de 19 de agosto de 2008. Véase Apéndice de la Apelación, págs. 121-122.
En cuanto al interdicto, resolvemos que no procede. La parte tramitó paralelamente su solicitud a la Oficina de Permisos del Municipio. Si bien éste no tenía permiso vigente durante el pleito, administrativamente lo obtuvo y así surge de la resolución de 17 de diciembre de 2008 a la que antes nos hemos referido. La existencia del permiso de uso hace inoficioso el interdicto solicitado, en este momento.
Sin embargo, debemos recordar que la demanda incluyó la petición de interdicto y la reclamación de daños y perjuicios.
En cuanto a la reclamación de daños, determinamos que la causa de acción continúa vigente y no debió ser desestimada. El Tribunal de Primera Instancia deberá continuar los trámites de la causa hasta su eventual adjudicación.
IV
Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Primera Instancia en cuanto a la desestimación de la causa de acción por daños y perjuicios incoada por Santa Paula. Se ordena la devolución del expediente para que continúen los procedimientos conforme a lo aquí resuelto.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.
Leda. María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones